## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 15 |
| BIOAMBER INC.,[1] | Case No. 18-11291 (LSS) |
| Debtor in a foreign proceeding. | **Objection Deadline: October 2, 2018 at 4:00 p.m.**<br>**Hearing Date: October 9, 2018 at 11:30 a.m.** |

## MOTION OF FOREIGN REPRESENTATIVE
## FOR ENTRY OF AN ORDER (I) RECOGNIZING
## CANADIAN SALE ORDER, (II) AUTHORIZING AND APPROVING
## SALE OF ASSETS, AND (III) GRANTING RELATED RELIEF

PricewaterhouseCoopers Inc., the authorized foreign representative ("PwC" or "Foreign Representative") of the above-captioned debtor ("BioAmber" or the "Debtor") in proceedings (the "CCAA Proceeding") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA"), pending before the Québec Superior Court, Commercial Division (the "Canadian Court"), respectfully submits this motion (the "Motion") for the entry of an order (i) recognizing and giving full force and effect to the *Approval and Vesting Order* dated September 18, 2018 (the "Canadian Sale Order"), (ii) authorizing and approving the sale of substantially all of BioAmber's assets (the "Assets") to 9384-3076 Quebec Inc. (the "Purchaser") pursuant to the terms and conditions set forth in the Canadian Sale Order, and (iii) granting certain related relief.

A proposed form of order is attached hereto as Exhibit D (the "Proposed Order").[2] In support of the Motion, the Foreign Representative respectfully submits the declaration of Mica

---

[1]    The last four digits of the Debtor's federal tax identification number are 1045.  The Debtor's principal offices are located at 1250 René-Lévesque Blvd. West, Suite 4310, Montréal, Québec H3B 4W8, Canada.

[2]    A true and correct copy of the Canadian Sale Order is attached to the Proposed Order as Exhibit 1.

Arlette (the "Arlette Declaration"), attached hereto as Exhibit C. In further support of the relief requested herein, the Foreign Representative respectfully represents as follows:

## PRELIMINARY STATEMENT

1.    The proposed sale (the "Sale") of the Assets in accordance with the terms and conditions of the Canadian Sale Order represents the culmination of the orderly liquidation process authorized by the Canadian Court. Prior to liquidation, the Foreign Representative, with the assistance of BioAmber and its advisors, conducted a sale and investment solicitation process (the "SISP"), pursuant to which it marketed the Debtor and its wholly owned subsidiaries (collectively with BioAmber, the "Company") as a going concern. Although the SISP generated interest in the Assets, at the conclusion of the SISP, the Company did not receive any binding offers to purchase the Company as a going concern. Accordingly, on July 31, 2018, the Canadian Court issued a *Third Amended and Restated Initial Order* (the "Third Initial Order"), granting additional powers to the Foreign Representative in order to allow the Foreign Representative to proceed with the orderly liquidation of the Company. The Sale is a result of these efforts.

2.    The Foreign Representative believes that the Sale represents the highest and best offer for the Assets and is in the best interests of the Debtor's creditors.

3.    For the reasons set forth herein, the Foreign Representative respectfully submits that the Sale is in the best interests of the Debtor and its creditors and the relief requested herein should be granted.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This case has been properly commenced pursuant to section 1504 of Title 11

of the United States Code (the "Bankruptcy Code") by the filing of a petition for recognition of the CCAA Proceeding pursuant to section 1515 of the Bankruptcy Code.

5.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Rule 9013-1(f) of the *Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware* (the "Local Rules"), the Foreign Representative consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6.    Venue is proper before this Court pursuant to 28 U.S.C. § 1410.

## BACKGROUND

### A.    General Case Background

7.    On May 24, 2018, BioAmber commenced the CCAA Proceeding in the Canadian Court and the Canadian Court issued the CCAA Initial Order granting certain provisional relief in connection with the CCAA Proceeding.

8.    On May 30, 2018 (the "Commencement Date"), the Debtor, the authorized Foreign Representative at the time, commenced this chapter 15 case by filing, among other things, a verified chapter 15 petition seeking recognition by the Court of the CCAA Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code.

9.    On June 15, 2018, the Canadian Court entered the *Amended and Restated Initial Order* (the "Initial Order"), authorizing, among other things, (a) BioAmber Canada Inc. and BioAmber Sarnia Inc. (together, the "Canadian Debtors") to incur certain indebtedness pursuant to a DIP Credit Facility Agreement with Maynbridge Capital Inc. (the "DIP Lender"),

up to a maximum principal amount of $3,045,000 and (b) the Debtor to make certain intercompany advances.

10.    On June 20, 2018, the Court entered the *Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief* [Docket No. 13] (the "Recognition Order").

### B.    Company Background

11.    The Debtor is a sustainable chemicals company.    Its proprietary technology platform combines industrial biotechnology and chemical catalysis to convert renewable feedstock into building block chemicals for use in a wide variety of everyday products, including plastics, resins, food additives, and personal care products.    The Debtor currently sells its first product, bio-succinic acid, to customers in a variety of chemical markets.

12.    The Debtor's core product is bio-based succinic acid, which can be used to make a broad range of products.    The Debtor can also transform its bio-based succinic acid into 1,4-Butanedial ("BDO") and Tetrahydrofuran ("THF") in a single catalytic step.    BDO and THF are used to make engineering plastics, polyurethanes, biodegradable polyesters, spandex, and other specialty chemicals.

### C.    Foreign Representative

13.    Pursuant to the Initial Order, PwC was appointed to monitor the business and financial affairs of the Company as an officer of the Canadian Court (the "Monitor").    The Initial Order also authorized the Monitor or the Company to commence this chapter 15 proceeding and for either to act as the foreign representative.    Accordingly, the Debtor commenced this chapter 15 case as the authorized foreign representative.

14.     On July 31, 2018, subsequent to the failed SISP, the Canadian Court entered the Third Initial Order, granting additional powers to the Monitor in order to, among other things, allow the Monitor to proceed with the liquidation of the Company's assets and to file pleadings in the Canadian Court on behalf of the Company.

15.     On August 31, 2018, all of the directors and officers of the Company resigned.   Following their resignation, the Monitor continued to work with the Company's remaining employees to administer the Company's limited operations, including the sale of remaining finished goods inventories and the collection of outstanding accounts receivable, pursuant to its expanded powers provided in the Third Initial Order.

16.     As a result of the foregoing, PwC is the acting Foreign Representative and authorized to file this Motion pursuant to the terms of the Third Initial Order.  A true and correct copy of the Third Initial Order is attached hereto as Exhibit A.

**D.     The Marketing and Sale Efforts[3]**

17.     Following the issuance of the Third Initial Order, the Monitor managed the SISP in a liquidation scenario, pursuant to its expanded powers provided under the Third Initial Order, in order to solicit potential purchasers of the Company's assets (the "Call for Bids").

18.     As part of the Call for Bids, the Monitor and the Company approached 96 potential purchasers, among which 41 signed non-disclosure agreements, 21 reviewed the Company's data room and 5 visited the Company's plant located in Sarnia, Ontario.

19.     A total of 11 letters of intent were received by the Monitor (the "Bids"), all of which were different forms of liquidation offers for some or all of the Company's assets.

---

[3]     Capitalized terms used but not defined in this Section D shall the meanings ascribed to them in the APA.

20.     During the week of August 27, 2018, the Monitor, in consultation with the Company and its secured creditors, reviewed the Bids as well as some additional information provided by certain potential purchasers.

21.     The Monitor, in consultation with the Company, determined that two of the Bids received (the "Qualified Bids") from the Purchaser and another potential purchaser (the "Leading Bidders") had the potential to ensure the highest overall economic recovery to the Company's creditors.

22.     The consideration proposed by the Qualified Bids was sufficient to repay DIP Lender in full, with limited additional recoveries available to Comerica Bank, Export Development Canada, and Farm Credit Canada (collectively, the "Comerica Syndicate"), but was not sufficient to provide any recoveries to the other secured or unsecured creditors of the Company.

23.     Therefore, during the week of August 27, 2018, the Monitor consulted the DIP Lender and the Comerica Syndicate on the analysis conducted with respect to the Qualified Bids on several occasions and raised a number of questions to the Leading Bidders with regards to the terms and conditions of the Qualified Bids.

24.     On August 29, 2018, the Monitor asked the Leading Bidders whether they would consider amending the terms of their Qualified Bid in order to increase the up-front consideration paid under the contemplated transaction in exchange for the waiver of certain future monetary consideration.

25.     Only one of the Leading Bidders accepted to amend its Qualified Bid and increased its up-front consideration in the Purchase Price.

26.     The Monitor, in consultation with the Company, the DIP Lender, and the Comerica Syndicate, determined that such amended qualified bid was the highest and best bid and entered into negotiations with the Purchaser towards a definitive sale agreement, which culminated in the *Asset Purchase Agreement* (the "APA") attached hereto as Exhibit B.

**E.     The Sale and Allocation of Purchase Price**

27.     The Sale includes the purchase of all of the rights and interests of the Company in its books and records, owned real and personal property, and intellectual property, with the exception of certain specific assets such as the Company's cash, accounts receivable, and inventory.  A summary of the key terms of the Sale and APA is provided below.

28.     The Sale includes the assets of the Debtor, which is based in the United States.  Neither the DIP Lender nor the Comerica Syndicate have any security interests in assets located in the United States.  Accordingly, the portion of the purchase price allocable to these assets will not be distributed to the DIP Lender or Comerica Syndicate and will instead be distributed to creditors of the Debtor.

29.     The Purchaser anticipates allocating a minimum of $150,000 (USD) of the purchase price to the assets of the Debtor.

**F.     The Canadian Sale Order**

30.     On September 13, 2018, the Foreign Representative filed in the CCAA Proceeding a motion for the entry of the Canadian Sale Order (the "Canadian Sale Motion") approving the Sale.

31.     On September 18, 2018, the Canadian Court entered the Canadian Sale Order and approved the Canadian Sale Motion and the Sale to the Purchaser on the terms of the APA.

### G.    The Asset Purchase Agreement

32.    Pursuant to Local Rule 6004-1, the following chart summarizes the material provisions of the APA and Canadian Sale Order.  The Foreign Representative believes that the inclusion of these provisions of the APA is fair and reasonable under the circumstances, is the result of good faith, arm's-length negotiations between the Company and the Purchaser, and is in the best interests of the Company, their creditors, and other stakeholders.

| MATERIAL TERMS OF THE APA AND CANADIAN SALE ORDER | |
|---|---|
| Purchaser<br>Local Rule 6004-1(b)(iv)(A) | The Buyer is not an insider (as defined in section 101(31) of the Bankruptcy Code) of the Debtor or the Canadian Debtors. |
| Purchased Assets | The purchased assets are described in Section 1.1 of the APA and include, subject to certain exceptions, the Company's books and records, real property, personal property, and intellectual property. |
| Purchase Price | The purchase price is USD $4,340,000 (USD) and is set forth in Section 3.1 and 3.2 of the APA. |
| Releases<br>Local Rule 6004-1(b)(iv)(C) | Pursuant to Section 10.1 of the APA, the Company and Purchaser will mutually release and forever discharge each other from any breach of the representation and warranties set forth in the APA after 24 months from the Closing Date. |
| Competitive Bidding<br>Local Rule 6004-1(b)(iv)(D) | The APA and Sale are the result of a competitive bidding process described above.  No auction is contemplated by the Company or Foreign Representative. |
| Closing Date and Other Deadlines<br>Local Rule 6004-1(b)(iv)(E) | The Closing Date shall be three business days following the issuance of the entry of an order by this Court recognizing the Canadian Sale Order, or such other date as may be agreed to in writing by the Parties.  *See* APA, § 1.1(p). |

| MATERIAL TERMS OF THE APA AND CANADIAN SALE ORDER | |
|---|---|
| Use of Proceeds<br>Local Rule 6004-1(b)(iv)(H) | The Parties shall agree on and report an allocation of the Purchase Price among the Purchased Assets no later than seven (7) days prior to Closing Time. *See* APA, § 3.4; Canadian Sale Order, ¶¶ 9, 10, 20, 21.  The Purchaser agrees to allocate $150,000 (USD) of the Purchase Price to purchased assets owned by the Debtor.  *See* August 31, 2018 Email annexed to Schedule Recital F of APA. |
| Record Retention<br>Local Rule 6004-1(b)(iv)(J) | The Company's minute books and other corporate records are excluded assets. The Company may also retain copies of all books and records included in the Assets to the extent required by applicable law. *See* APA, § 1.1(z). |
| Sale of Avoidance Actions<br>Local Rule 6004-1(b)(iv)(K) | N/A. |
| Requested Findings as to Successor Liability<br>Local Rule 6004-1(b)(iv)(L) | Pursuant to Section 5.2 of the APA, the Purchaser shall not be responsible for any Liabilities towards any Employees for salary, wages, bonuses, commissions, vacation, vacation pay, termination pay, severance pay and any other compensation relating to the employment of any Employees, or the termination of the employment of any Employees prior to or after the Closing Date. |
| Sale Free and Clear of Unexpired Leases<br>Local Rule 6004-1(b)(iv)(M) | N/A |
| Credit Bid<br>Local Rule 6004-1(b)(iv)(N) | N/A |
| Relief from Bankruptcy Rule 6004(h)<br>Local Rule 6004-1(b)(iv)(N) | While the APA does not contain a provision explicitly requiring the Company to seek a waiver of Bankruptcy Rule 6004(h), the Foreign Representative seeks a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to eliminate any further administrative expenses and to expedite the closure of this case and the Canadian Proceeding. *See* Proposed Order, ¶ 7. |

**H.**     **Approval by this Court**

33.     The substantial majority of the assets to be sold are in Canada and, thus, the Foreign Representative seeks this Court's recognition and enforcement of the Canadian Sale

Order with respect to such assets. Certain of the assets to be sold pursuant to the APA constitute assets located in the United States. Thus, in addition to seeking recognition, the Foreign Representative seeks this Court's approval of the sale of assets located in the United States free and clear of any liens, claims, encumbrances, and other interests.

34.     By this Motion, the Foreign Representative seeks entry of the Proposed Order recognizing and giving full force and effect to the Canadian Sale Order approving the sale of the Assets under the APA.

35.     As described in the Arlette Declaration, the bid for the Assets that is memorialized in the APA represents the highest and best offer for the Assets. Further, entry of an order recognizing the Canadian Sale Order is a condition precedent to the closing of the Sale. Absent the relief requested herein, the Company and its creditors will likely suffer irreparable harm through a piecemeal liquidation.

36.     In addition to seeking recognition and enforcement of the Canadian Sale Order approving the APA, the Foreign Representative requests that this Court, pursuant to sections 363, 1507, 1520, and 1521 of the Bankruptcy Code, authorize and approve the sale of the assets located in the United States (collectively, the "U.S. Assets") in accordance with the terms and conditions of the APA. The U.S. Assets are minimal relative to the Assets as a whole. Prior to the Commencement Date, the Company owned *de minimis* assets in the United States, limited to an office lease and certain furniture and other personal property.

## RELIEF REQUESTED

37.     As acknowledged in the Canadian Sale Order, the Purchaser conditioned the Sale on recognition of the Canadian Sale Order in the United States. Moreover, certain of the Debtor's assets are located in the territorial jurisdiction of the United States. Accordingly, the

Foreign Representative seeks recognition and enforcement of the Canadian Sale Order and approval of the sale of the Assets pursuant to sections 363, 1520, and 1521(a)(5) of the Bankruptcy Code.

38.    In addition, pursuant to section 1521(b) of the Bankruptcy Code, the Foreign Representative requests that the Court entrust the distribution of the proceeds of the Sale to the Foreign Representative.

## BASIS FOR THE RELIEF REQUESTED

### A.    The Court Should Recognize the Canadian Sale Order

39.    The Foreign Representative seeks recognition and enforcement of the Canadian Sale Order to ensure that it is effective under the laws of the United States.

40.    Section 1521 of the Bankruptcy Code sets forth various forms of relief that may be granted upon recognition of a foreign proceeding, at the request of the foreign representative. Section 1521(a)(5) provides that the Court may "entrust[] the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court." Section 1521(a)(7) of the Bankruptcy Code provides that the Court may "grant[] any additional relief that may be available to a trustee."

41.    Prior to entering the Canadian Sale Order, the Canadian Court scrutinized the various bids and the proposed Sale, which is a result of the efforts of the Monitor and the Company and its advisors to maximize the value of the Assets. The comprehensive and robust solicitation process carried out by the Company and the Monitor, and overseen by the Canadian Court, with input from the Company's key stakeholders, ensures that the process was fair and the Sale is a positive result for the Debtor's stakeholders.

42. Recognition of the Canadian Sale Order will permit the Debtor to proceed with the Sale in the Canadian Proceeding without disruption. Absent the relief requested herein, the Debtor will suffer irreparable harm, as recognition of the Canadian Sale Order in the United States is a condition precedent to the closing of the Sale.

43. Moreover, granting the relief requested herein fulfills the public policy embodied in chapter 15 of the Bankruptcy Code, which is "to provide effective mechanisms" to promote cooperation in cross-border insolvency cases. 11 U.S.C. § 1501(a). Accordingly, the Foreign Representative respectfully submits that this Court should recognize and give full force and effect under the laws of the United States to the Canadian Sale Order.

## B.    Approval of the Sale of the Assets Is Authorized Under the Bankruptcy Code

44. The Recognition Order provides that the "CCAA Proceeding is granted recognition as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code." Recognition Order, ¶ 2. Section 1520(a)(2) of the Bankruptcy Code provides that, upon recognition of a foreign proceeding that is a foreign main proceeding, section 363 applies to a "transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that [it] would apply to property of an estate." *See also In re Fairfield Sentry Ltd.*, 768 F.3d 239, 245-46 (2d Cir. 2014) (applying 363 review to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States); *In re Elpida Memory, Inc.*, Case No. 12-10947 (CSS), 2012 WL 6090194 (Bankr. D. Del. Nov. 20, 2012) (same).

45. Section 1507 of the Bankruptcy Code further provides that "[s]ubject to the specific limitations stated elsewhere in [chapter 15 of the Bankruptcy Code], the court, if

recognition is granted, may provide additional assistance to a foreign representative under [chapter 15] or under other laws of the United States." 11 U.S.C. § 1507(a).

46.     Similarly, section 1521 of the Bankruptcy Code provides, in relevant part, that "[u]pon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of [chapter 15 of the Bankruptcy Code] and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including . . . granting any additional relief that may be available to a trustee." 11 U.S.C. § 1521(a)(7).

47.     Section 363(b)(1) provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." This Court has held that a sale of assets may be authorized under section 363 of the Bankruptcy Code if there is a "sound business purpose" for the sale. *See Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147 (Bankr. D. Del. 1999) (citing *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)).

48.     Once a court is satisfied that there is a sound business reason justifying the sale, the court must also determine that adequate and reasonable notice has been provided to interested parties, that the sale price is fair and reasonable, and that the purchaser is proceeding in good faith. *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (citation omitted).

49.     The Foreign Representative submits that ample business justifications exist to sell the Assets to the Purchaser. As described above and in the Arlette Declaration, the Company ran an extensive SISP that ultimately failed to solicit a binding offer. Subsequently,

the Monitor was authorized to run an orderly liquidation sale process – the culmination of which is the Sale. The Company has no ongoing business operations and limited cash availability. Accordingly, it is critical that the Sale close as soon as possible. The Sale is the only actionable option available to the Debtor that will allow for a potential recovery for Company's creditors without the need for outside funding.

50.     As set forth in the Arlette Declaration, the Sale represents the highest and best offer for the Assets. Moreover, recognition of the Canadian Sale Order and approval of the sale of the Assets in the United States is a condition precedent to the closing of the Sale. Entry of the Proposed Order will permit the Foreign Representative to implement the Sale in a timely and efficient manner that will maximize the value of the Assets for the benefit of the Company's creditors.

51.     Relief similar to that requested in this Motion related to asset sales pursuant to section 363 of the Bankruptcy Code has been granted in other chapter 15 cases. *See*, *e.g.*, *In re PT Holdco, Inc.*, Case No. 16-10131 (LSS) (Bankr. D. Del. March 4, 2016) [Docket No. 47]; *In re Thane Int'l, Inc.*, Case No. 15-12186 (KG) (Bankr. D. Del. Dec. 1, 2015) [Docket No. 42]; *In re Xchange Technology Group LLC*, Case No. 13-12809 (KG) (Bankr. D. Del. Nov. 25, 2013) [Docket No. 47].

52.     For all of the foregoing reasons, the Foreign Representative respectfully submits that sufficient cause exists to authorize and approve the Sale pursuant to section 363 of the Bankruptcy Code.

**C.**     **The Purchaser Is Entitled to All Protections Available to a Good Faith Buyer**

53.    The Foreign Representative further requests that this Court find that the Purchaser is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) of the Bankruptcy Code protects a good faith purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.

54.    While the Bankruptcy Code does not define "good faith," courts generally consider whether there is any evidence of "fraud, collusion between the purchaser and other bidders or the [debtor], or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

55.    Neither the Purchaser nor any of the Purchaser's representatives or affiliates is an "insider" of the Company. The Foreign Representative is not aware of any fraud, collusion, or attempt to take unfair advantage of other bidders. In addition, the terms of the Sale were negotiated at arm's length and there are no other terms of the Sale that are not contained in the APA or Canadian Sale Order. Based on the foregoing, and a declaration to be submitted by the Purchaser describing its good faith conduct throughout the sale process, the Foreign Representative submits that the Court should find that the Purchaser constitutes a good faith purchaser entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

**D.**    **The Distribution of the Sale Proceeds**

56.    Pursuant to section 1521(b) of the Bankruptcy Code, the Foreign Representative seeks to be entrusted with the distribution of the proceeds of the Sale for purposes of distributing such proceeds in the Canadian Proceeding in accordance with Canadian law. Section 1521(b) of the Bankruptcy Code provides:

> Upon recognition of a foreign proceeding, whether main or nonmain, the court may, at the request of the foreign representative, entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative or another person, including an examiner, authorized by the court, provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected.

57.    Pursuant to section 1522(a) of the Bankruptcy Code, the Court may grant relief under section 1521 "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."

58.    In addition, section 1507(a) of the Bankruptcy Code permits the Court to provide additional assistance to a foreign representative. However, in determining whether to provide such additional assistance, the Court, must "consider whether such additional assistance, consistent with the principles of comity, will reasonably assure (1) just treatment of all holders of claims against or interests in the debtor's property; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential or fraudulent disposition of property of the debtor; (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns." 11 U.S.C. § 1507(b)(4) (emphasis added).

59.    The Foreign Representative respectfully requests that the Court find that (i) the proposed treatment of all holders of claims against the Debtor in the Canadian Proceeding is just under the circumstances and (ii) entrust the Foreign Representative with the distribution of the proceeds of the Sale in the Canadian Proceeding pursuant to applicable Canadian law.    As discussed above, the purchase price allocable to U.S. Assets will be earmarked for creditors of the Debtor and will not be used to pay the creditors of the Canadian Debtors.    The Foreign Representative further submits that the interests of the creditors and other interested entities, including the Debtor, will be best served if there is a central authority for distributing the proceeds of the Sale.

60.    For the foregoing reasons, the Foreign Representative respectfully requests that the Court entrust the proceeds of the Sale to the Foreign Representative to be distributed in accordance with applicable Canadian law.

**E.    Waiver of Bankruptcy Rules 6004(h) and 6006(d)**

61.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."    Similarly, Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."

62.    The Foreign Representative requests that the Proposed Order, once entered, be effective immediately by providing that the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d) are waived.

63.    Time is of the essence with respect to the relief embodied in the Proposed Order and the consummation of the Sale.    To achieve the best value for the Assets, the Foreign

Representative must be afforded the opportunity to promptly sell the Assets in accordance with the Canadian Sale Order without undue disruption or delay – thereby avoiding any further administrative expenses and facilitating the expeditious closure of this case and the Canadian Proceeding. Therefore, the Foreign Representative requests that the Court waive the 14-day stay period under Bankruptcy Rules 6004(h) and 6006(d) to the extent applicable.

## CONCLUSION

64.    For the foregoing reasons, the Foreign Representative respectfully requests that this Court enter an order (i) recognizing and giving full force and effect to the Canadian Sale Order; (ii) authorizing and approving the sale of the Assets to the Purchaser; and (iii) granting such other relief as may be just and proper.

## NOTICE

65.    The Foreign Representative has provided notice of the Motion to the following parties, or their counsel, if known:  (i) all persons or bodies authorized to administer foreign proceedings of the Debtor; (ii) principal parties that have appeared in the CCAA Proceeding as of the date of service of the relevant pleadings; (iii) the Office of the United States Trustee for the District of Delaware; (iv) the Debtor's secured creditors and their counsel, if known; (v) the Office of the Delaware Secretary of State; (vi) the Internal Revenue Service; (vii) the Securities and Exchange Commission; and (vii) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## NO PRIOR REQUEST

66.    No previous request for the relief sought herein has been made to this or any other court.

DOCS_SF:97278.3

**WHEREFORE**, the Foreign Representative respectfully requests that the Court:

(a) enter the proposed order, upon notice and a hearing, substantially in the form attached hereto

as <u>Exhibit C</u>; and (b) grant such other and further relief as it deems just and proper.

Dated:  September 20, 2018

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Colin R. Robinson*
Jeremy Richards (CA Bar No. 102300)
Colin R. Robinson (DE Bar No. 5524)
Jason H. Rosell (CA Bar No. 269126)
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email:        jrichards@pszjlaw.com
              crobinson@pszjlaw.com
              jrosell@pszjlaw.com

*Counsel to the Foreign Representative*